## SUPREME COURT.

### ALGER agt. SCOVILLE, CLAPP, WELLS, CHAPIN, AND THE DUTCHESS COUNTY IRON COMPANY.

Where the complaint contained allegations of facts, and demanded judgment against the several defendants, substantially as follows: against Scoville for $4000 and interest (being the amount of certain notes of the Dutchess County Iron Company, upon which plaintiff was endorser and had paid; and which he alleged Scoville was under an agreement to pay); that Clapp may be removed as assignee of the said company; that a receiver of the property of the company may be appointed and the same appropriated to the payment of the company's debts. And if there be any deficiency that the said Scoville may be adjudged to pay such deficiency, on all debts contracted on or before the 15th day of December 1849. (Wells and Chapin, the other defendants, being stockholders, with Scoville, were claimed to have an interest adverse to the plaintiff.)

*Held,* that judgment must be rendered for defendants on demurrer, *First.* Because the causes of action are some of them against a trustee, and others on contract; *Second.* Because the pursuit of the property of a debtor and demand of a receiver can only be founded on a judgment; and *Third.* Because the complaint contains distinct causes of action, in some of which some of the defendants are not interested.

If different causes of action can all be included in one of the classes mentioned in § 167, is it sufficient, where some of them might also be included in another class? It is not. Why? Because a legitimate construction of § 167 will not permit the joining of causes of action which belong to more than one class. And the last clause of that section says: "But the causes of action so united, must all belong to one *only* of these classes," &c.

*It seems,* that the Code does not contemplate the union of a cause of action triable by the court, with one triable by a jury, although there is no express prohibition against it.

*May General Term,* 1851—*Before* MORSE, BARCULO and BROWN, *Justices.* This suit was commenced by the service of summons and complaint on the defendants, Scoville, Clapp, Wells, and the Dutchess County Iron Company, on the 20th April, 1850.

The defendants, Scoville, Clapp, and the Dutchess County Iron Company appeared by William Eno.

The defendant Wells, appeared by William Stewart Eno.

The defendant Samuel C. Scoville demurred to the complaint. His demurrer was served May 4, 1850.

The defendants, the Dutchess Co. Iron Company and Daniel S. Clapp, also demurred to the complaint. Their demurrer was served May 4, 1850.

The defendent Moses Wells also demurred to the complaint. His demurrer was served May 4, 1850.

On the 4th of May 1850, a demand was made on behalf of the defendants who appeared, that the place of trial be changed to Dutchess county, which was acceded to by notice served on the 11th of said May.

The issues of law were tried at a special term held at Pough-keepsie, by Mr. Justice BARCULO, on the 27th of June 1850; and on the 8th day of July 1850, judgment was rendered for the defendants respectively, on the demurrers.

Judgments were entered thereupon on the 18th day of September 1850, with the clerk of Dutchess county, against the plaintiff, in favor of the defendants Scoville, Clapp and the Dutchess County Iron Company, for $94·96, and in favor of the defendant Moses Wells for $94·96.

The plaintiff on the 27th of September 1850, appealed to the general term from both of the said judgments.

The following is an abstract of the pleadings. The complaint showed,

*First.* The formation of the Dutchess County Iron Company, under statute of the 17th of February 1848, authorizing the formation of incorporations, to be located at North East in that county; capital stock of the company to be $25,000, to be divided into 250 shares of $100 each.

*Second.* That the original stockholders were Duncan J. Perry, who took 62, Moses Wells, who took 63, Phineas Chapin, who took 42, and the plaintiff, who took 83 shares; and that in the summer of 1849, Perry transferred his 62 shares to plaintiff.

*Third.* That on the 13th of December 1849, plaintiff sold and transferred his 145 shares to defendant Scoville, who assumed plaintiff's rights and liabilities in respect to such shares. That it was agreed between plaintiff and Scoville, that plaintiff should transfer to Scoville said shares, and also a claim of plaintiff against the said company for $3,350; that Scoville should con-

vey to plaintiff a farm in Monroe county, New York, with the utensils and stock thereon, and should guarantee to plaintiff the payment, as they became due, of all the notes of said company, which had been endorsed by plaintiff, and should indemnify plaintiff against all engagements or liabilities incurred by him for said company, or by reason of his having been a stockholder; that plaintiff performed his part of said agreement, by transferring to Scoville said stock and claim, and getting a note for Scoville from the company for the claim.

*Fourth.* That there were at the time outstanding the following notes of the company endorsed by plaintiff:

One of $1,000, dated August 15, 1849; one of $800, due about the last of December 1849; one of $500, dated 10th of September 1849; one of $1,000, dated September 25, 1849; one of $1,000, dated October 11, 1849; one of $500, dated 1st November 1849; all payable four months after date; and on the 13th of December 1849, plaintiff received from the company their note for $564·51, payable on demand, for balance of book account, due from company, after deducting the claim of $3,350, so transferred; on which note of $564·51, $142·79 remains due, according to the account annexed to the complaint.

*Fifth.* That the company have paid none of said notes; that upon the maturity of the note dated August 15, 1849, at Scoville's request, and on his promise to repay plaintiff in a few days, plaintiff took it up; that Scoville took up the $800 note, but he has taken up none of the others; that plaintiff being charged as endorser thereon, has taken up and paid all the others, giving notice thereof to Scoville, and requiring him to refund, which he has neglected to do.

*Sixth.* That the company stopped payment January 24, 1850, and entirely ceased manufacturing on the 6th March 1850.

*Seventh.* That, as plaintiff is informed and believes, on the 24th January 1850, they made an assignment to Daniel S. Clapp, of Salisbury, Connecticut; a person irresponsible, ignorant of the iron business, and incompetent to act as assignee. States on information and belief the company's debts to be about $30,000,

of which a part were contracted since the 13th day of December 1849, and their assets to be about sufficient to pay them if carefully administered by a competent person, but not otherwise; and states plaintiff's account with the company, annexed to the complaint, to be a true account.

*Eighth.* States on information and belief, that Wells and Chapin are insolvent. Demands judgment against Scoville for $4,000 and interest; removal of Clapp as assignee; appointment of a receiver of the company's property, and the appropriation of the same to the payment of its debts; and that Scoville be adjudged to pay deficiency on debts contracted since December 13, 1849, if there should be a deficiency.

Plaintiff's account with the company is annexed to complaint, and is part of the judgment roll.

The defendant Scoville demurred to the complaint, and specified the following grounds of demurrer:

1. Scoville's indemnity or guaranty is void, not being in writing.

2. That complaint does not show that plaintiff had incurred or would incur any individual liability for the company by reason of his having been a stockholder, or in respect to the stock transferred to Scoville.

3. That complaint does not show that any debts contracted by the company before plaintiff's transfer to Scoville, were binding upon plaintiff individually, by reason of his being a stockholder, or on account of the shares held by him, and that plaintiff's demand for judgment against Scoville for any deficiency on debts contracted before such sale, is unsupported by any facts, showing his liability.

4. That Scoville, Wells, Clapp, and the company are improperly joined in one action—the causes of action, and the relief against each being separate and distinct.

5. That the complaint improperly unites several and distinct causes of action; one against Scoville, one against Wells, and one against the company and Clapp, which can not be so joined.

6. That sufficient facts are not stated to constitute cause of action against Scoville.

Alger agt. Scoville and others.

The following grounds of demurrer were specified by the company and Clapp.

1. That complaint shows no judgment recovered against the company by plaintiff.

2. It does not demand a money judgment against the company.

3. That sufficient facts are not stated to authorize the court to set the assignment aside and appoint a receiver. No fraud in the assignment is shown, or mismanagement on the part of the assignee.

4. It shows no fact establishing the assignee's incompetency.

5. That the company and Clapp have been improperly joined with Scoville and Wells in one action, alleging that the cause of action and relief demanded against each are distinct.

6. That the complaint improperly unites distinct causes of action—one against the company and Clapp, one against Wells, and one against Scoville, which can not be done.

7. And that it does not show sufficient facts to constitute a cause of action against the company and Clapp.

The following grounds of demurrer are specified by defendant Wells:

1. That complaint states no fact which fixes individual liability on defendant Wells, or entitles plaintiff to any relief against him individually.

2. That Wells's liability from the complaint, if any, is as a member of the company, and he should have been sued as such in his corporate capacity.

3. That the causes of action against Wells, Scoville, Clapp, and the company, are separate; that they have been improperly joined.

4. That the complaint improperly unites several distinct causes of action—one against Scoville; one, if any, against Wells, and one against the company and Clapp: and

5. That sufficient facts to constitute a cause of action against Wells are not stated.

Alger agt. Scoville and others.

PLAINTIFF'S POINTS ON APPEAL.

This is an action to obtain payment of a debt due to the plaintiff by the Dutchess County Iron Company. The company having executed an assignment of all its property to Daniel S. Clapp, he is made a defendant because he has a fund for the payment of the debt. The other defendants are stockholders, and are therefore made defendants as having an interest in the controversy adverse to the plaintiff; and one of them, Scoville, is also a guarantor of the debt, and for that reason, also interested in the controversy. The complaint has been dismissed, and two separate judgments entered and judgment rolls filed, for reasons stated by the judge at special term to be: First, because the causes of action are some of them against a trustee, and others on contract; Second, because the pursuit of the property of a debtor and demand of a receiver can only be founded on a judgment; and Third, because the complaint contains distinct causes of action in some of which, some of the defendants are not interested. It is submitted that none of these reasons are well founded. There are, besides, two preliminary objections to the judgments.

*First.* Two distinct judgments, and judgment rolls in the same action, and entered at the same time, are an abuse, for which there is no warrant in the law (*Code*, § 245, 281).

*Second.* Nor could there be a judgment entered up in favor of four of the defendants, without a disposition of the case, as to the defendant Chapin (*Code*, § 274).

Independent of these objections, the judgment is erroneous for the following reasons:

*Third.* The objection that the complaint is demurrable, because the causes of action are, some of them, against a trustee, and others on contract, has not the least foundation. The causes of action all arise out of contract, express or implied. The obligations of the trustee all grow out of his undertaking as such. If the causes can all be included in one of the classes mentioned in § 167, that is enough, though some of them might also be included in another. Any other construction would lead to the grossest absurdities; as, for example, that claims to recover real

and personal property could not be united, though arising out of one contract; nor claims against a trustee to recover either real or personal property.

*Fourth.* The objection, that the pursuit of the property of the debtor and demand of a receiver can only be founded on a judgment, is an entire mistake. When the creditor has no specific interest in the property, then a judgment is necessary to give him an interest or lien. But when there is a trust, his right attaches as a beneficiary under it, and he can always enforce such without a judgment (Innes vs. Lansing, 7 *Paige*, 583).

*Fifth.* The objection that the complaint contains distinct causes of action, in some of which, some of the defendants are not interested is also untenable. There is but one cause of action, and that is the debt due by the company to the plaintiff. The other defendants are all affected incidentally. The company is made a defendant because it is the principal debtor; Mr. Clapp, because he is the assignee and holder of a fund for the payment of the debt; Messrs. Scoville, Wells and Chapin, because as stockholders they have an interest in the controversy; and Mr. Scoville also, because he is an indemnitor as to the whole or nearly the whole of the debt, *The rule is this : any person may be made a party, who has or claims an interest in the controversy, or is affected by the cause of action, or without whom there can not be a complete determination of the questions involved in the case* (*Code*, § 118, 122, 167). The cause of action here being the company's debt, and the controversy being about its payment, the question respecting each defendant is this; is he interested in, or affected by, the payment of that debt, or without him can there be a complete determination of the questions involved. In considering this question, we look beyond the demand for relief, to the body of the complaint. Is there a cause of action set forth, and if so, what relief can be given upon it (*Code*, § 144, 275). The complaint shows an indebtedness of the company to the plaintiff. For that, judgment can be given against the company. Clapp, the fund holder, is interested or affected, otherwise an assignor or assignee could never be joined. Scoville, the guar-

antor, is interested or affected, otherwise a principal and surety could never be joined. Wells and Chapin, stockholders, are interested, or affected, otherwise, a trustee and beneficiary could never be joined (6 *John.* 139; 4 *Cow.* 682; *Story Eq. Pl.* 169, 207, 284, 285; *Code,* § 118, 124; Many vs. Beekman Iron Company 9 *Paige,* 194; Newland vs. Rogers, 3 *Barb. Ch. R.* 434).

*Sixth.* That the three defendants first named in the title, are necessary parties, is perfectly clear; because, according to well settled principles, the controversy can not be finally ended without them (Boyd vs. Hoyt, 5 *Paige,* 65; Smedburg vs. Whittlesey, 3 *Sand. Ch. R.* 321).

*Seventh.* Whether Wells and Chapin be proper parties or not, the other three defendants can not raise the question. It is nothing to them, whether there is a good cause of action against other defendants or not. This was so under the former practice in equity, and much more is it so under the Code. It is no ground of demurrer that parties have been improperly joined. That is to be provided for in the judgment (*Code,* § 274; Whitbeck vs. Edgar, 2 *Barb.* 106; Cherry vs. Monroe, *id.* 618).

*Eighth.* Wells and Chapin are, however, proper parties. They have an interest in the distribution of the trust fund, in the hands of Clapp; and are entitled to be heard upon the question. Unless they were made parties, Clapp might have a second time to litigate with them the question whether he ought to pay the claim of the plaintiff. Without their presence, the court can not make a complete determination of the controversy. Besides the stockholders may, in a certain event, be liable for the debts (*Laws of* 1848, 56, § 10, 18; Cunningham vs. Pell, 5 *Paige,* 607; Kent vs. Lee, 2 *Sandf. Ch. R.* 105).

*Ninth.* Whether the plaintiff is entitled to have Clapp removed as trustee, or a receiver appointed, is of no importance so far as the demurrer is concerned, because the demand for them is merely subsidiary to the main object; though if the allegations of the complaint be admitted, there is sufficient legal reason for both.

*Tenth.* The undertaking of Scoville is not within the statute of frauds. It is a contract of indemnity made to a surety, and

upon a new consideration. It is an original, not a collateral undertaking (Mercein vs. Andrus, 10 *Wend.* 461; Rogers vs. Kneeland, 13 *Wend.* 115; Barnum vs. Childs, 1 *Sandf. Sup. C. R.* 60; Man vs. Cusine, 2 *Barb. Sup. C. R.* 294; Elder vs. Warfield, 7 *Harr. & John.* 391; *Burge, Suretyship,* 26). Besides, the agreement has been in part performed (2 *Story Eq. Juris.* §759, 1522).

D. DUDLEY FIELD, *for Plaintiff.*
WM. ENO, *for Defendants.*

By the Court, BARCULO, Justice.—I am still of the opinion that the demurrers were well taken for the reasons assigned at the special term. But as the case has been argued before us with much force and earnestness, by one of the learned authors of the code, I will examine one or two of his propositions a little more fully.

The third point of the learned counsel claims that " the objection that the complaint is demurrable because the causes of action are some of them against a trustee and others on contract, has not the least foundation. The causes of action all arise out of contract, express or implied. The obligations of the trustee all grow out of his undertaking as such. If the causes can all be included in one of the classes mentioned in § 167, that is enough, though some of them might also be included in another."

This proposition involves the construction to be given to section 167 of the Code. If the construction contended for is sustained, then it follows that a plaintiff may unite in one complaint, a claim upon a promissory note for the payment· of a sum of money with a claim upon another contract to deliver a thousand bushels of wheat, and a claim for the specific performance of another contract to convey a farm, and a claim upon a fourth contract for the execution of a trust. I am unable so to construe the section in question. On the contrary, it seems to me quite clear that the terms of the section and the other provisions of the Code, as well as the settled principles of good pleading, are irreconcilable with the views of the learned expounding author.

The section (167) provides that the plaintiff may unite several causes of action in the same complaint where they all arise out of

1. Contract express or implied; or

2. Injuries with or without force to the person; or

3. Injuries with or without force to property; or

4. Injuries to character; or

5. Claims to recover real property, with or without damages for withholding thereof, and the rents and profits of the same; or

6. Claims to recover personal property, with or without damages for the withholding thereof; or

7. Claims against a trustee by virtue of a contract or by operation of law.

To any one acquainted with the law as it stood prior to the Code, it is quite obvious that this section is mainly an embodiment of the rules of pleading as they existed, with some omissions and numerous imperfections. The first class includes the old action of assumpsit and debt upon contract and covenant. The second embraces actions of assault and battery, false imprisonment, &c. The third, refers to actions of trespass or case for injuries to property. The fourth, is confined to actions for defamation. The fifth, includes actions of ejectment, and perhaps, suits for a specifice performance, although, for reasons hereafter adverted to, it is doubtful whether the two can be joined. The sixth embraces trover and replevin; and the seventh covers all cases of trust. It is also apparent that some actions, as suits for divorce, actions upon judgments, and actions for partition of lands, do not fall within any of the classes.

A legitimate construction of this section will not permit *the joining of causes of action which belong to more than one class.* Although many actions for the recovery of real or personal property arise out of contract, still they are not to be united with a simple contract for the payment of money. Each subdivision must be interpreted with reference to the others; and the provision made in the fifth and sixth, for the recovery of real and personal property, to which title is given by contract, shows that the legislature did not intend to include those contracts in the first class. Otherwise many actions would fall under more than one head, and the different classes run into each other; and thus

the object of claissification would be defeated. Moreover, a party bringing an action to recover personal property claimed by virtue of a contract, might join with it a claim upon a promissory note, upon the ground of the contract, under the first class, or a claim for personal property tortiously taken, upon the ground that the first cause of action was under the sixth class; and, if it be true in law as in mathematics, that things equal to the same thing are equal to one another, a count on a simple contract to pay money might be joined with a count for personal property unlawfully taken. We have too much respect for the law makers to believe that they could have contemplated so great absurdities.

We have given what we consider to be a fair construction to the language of the section. But we are not left to the mere legal rules of interpretation. The last clause fixes the meaning in terms which can not be misunderstood, when it declares that " the causes of action, so united, must all belong to one only of these classes." This is equivalent to saying that every cause of action belongs to but one class, and expressly forbids the union of causes belonging to different classes. How it can be seriously contended, in the face of this provision, that a cause of action upon a simple contract for the payment of money, can be united with a claim against a trustee, or with a claim to remove a trustee and have a receiver appointed, as is attempted in this case, we are at a loss to conceive; especially when it is remembered that the seventh class expressly includes " claims against a trustee by virtue of a contract."

But it is said that our construction " will lead to the grossest absurdities." To this it may be answered, that we have no authority to strike out words from a plain enactment of the legislature to make statutes consistent; and while the word " only" remains in the clause no other interpretation is admissible. Moreover, for the court to attempt to correct and reconcile the statutes would be an endlesss as well as dangerous task. This construction, however, does not lead to, but, as we suppose, avoids absurdity. If there is any absurdity, it consists in the idea of settling all the controversies that may exist, however numerous,

Alger agt Scoville and others.

between the same parties in an ordinary trial by jury. This we admit is excessively preposterous.

It was well remarked by Justice HAND, in the recent case of Boyce vs Brown (7 *Barb.*), that " all experience has shown that trial by jury is best adapted to direct issues." He might have added, that the issues must be not only reasonably simple but reasonably few in number. In this respect those who advocate the union of many causes of action in one suit, manifest their ignorance of the true nature of *trial by jury.* For, when it is remembered that the theory of jury trial requires twelve men to be unanimous upon a disputed point, and that they must attain that unanimity in regard to every issue submitted to them; that they usually take no notes of the evidence, and consequently can not always bring it to mind after they retire; that a disagreement as to one essential issue renders a new trial as to all, necessary; it requires but little experience to discover that the fewer and simpler the questions, the better they are likely to be decided; that a multiplicity of issues increases the chance of a disagreement; that in long and complicated trials the jury too often either look to the judge as a guide, or resort to those compromise verdicts which show that the real merits have been lost sight of. It may be safely said that singleness and simplicity in this respect are indispensable to the full enjoyment of the benefit of trial by jury.

. But there are other sections of the Code inconsistent with the practice of uniting such claims as are attempted to be joined in this case. Sections 253 and 254 provide that issues of fact for the recovery of money only, or of specific real or personal property, *must* be tried by a *jury,* unless waived; and that all other issues are *triable by the court.* Although there is no express prohibition against uniting a cause of action triable by the court with one triable by a jury, it is obvious from the various provisions in relation to trials, verdicts and judgments, that such union is not contemplated; nor is it practicable, in our judgment. In the case before us, the plaintiff claims judgment for $4000 against one of the defendants upon a contract of indemnity to which the

Alger agt. Scoville and others.

others are not parties. If issue of fact be joined on this it *must* be tried by a jury, if either party wishes. In regard to another defendant the plaintiff charges that he is unfit to serve as a trustee, and prays that he may be removed and a receiver appointed of the estate. This is a matter triable by the court according to the Code; and, according to common sense and the nature of things, it can not be tried by a jury. Now there is no provision found either in the code or in the practice of the courts, for trying part of a cause in one forum and part in another; or part at one time, and part at another, where issues of fact only are joined. The clause in §254 authorizing the court " to order the whole issue, or any specific question of fact involved therein, to be tried by a jury," applies only to actions triable by the court, and is analogous to the former practice in chancery. It has no application to actions which must be tried by a jury. In such actions all the issues of fact must be submitted to the jury at the same time. If, therefore, there was nothing else in the code to forbid the joinder of such causes of action, the fact that some of the issues of fact which may be formed, are to be tried by a jury, and others by the court, would seem to present a difficulty almost, if not quite, insurmountable.

But it is said that we must construe the Code *liberally*. This is a very common argument, and is not unfrequently urged by both parties; meaning thereby a construction in their favor, respectively. Section 159, however, defines the liberality which courts are to exercise as that *which promotes substantial justice*. To permit the joinder of causes of action separate and dissimilar in their nature, requiring different trials, is not the liberality contemplated by the law; for, instead of promoting justice, it would tend to confusion and uncertainty.

Nor is it by any means certain that such a mode of pleading, if allowed, and if all the issues could be tried at once, would save expense to the parties, as is sometimes supposed. If the four causes of action first above named should be joined in one suit, and issues of fact formed thereon, it might very well happen that four different sets of witnesses would be required, coming from

Alger agt. Scoville and others.

distant parts of the state. This, of itself, renders it difficult for the parties to be fully prepared for trial, and hence causes are put off from term to term. Add to this, the increased length of the trial, the probability of a disagreement of the jury, or of errors of the court requiring another trial, and it will be seen, by those who are capable of judging, that the advantage of trying numerous issues at once, in point of *economy*, are very questionable.

However this may be, there can be no doubt that the Code has hitherto utterly failed to fullfil the predictions of those who claimed that it would diminish the quantity or aggregate expense of litigation. On the contrary, our courts are, in some sections of the state, flooded with questions arising upon its new provisions or its unusual phraseology. Hundreds and thousands of cases are carried from court to court to settle the meaning of ambiguous or unintelligible language; and it is believed, notwithstanding the great increase of the judicial force of the first district, and its acknowledged ability and industry, that there are more causes now pending in that district alone, than there were in the whole state, at any time prior to the new system.

It is in truth greatly to be regretted, that those who assumed the responsibility of devising a remedy for the insufficiencies of the former system, did not more fully understand and appreciate the true cause and nature of the evils to be remedied; which arose mainly from a want of sufficient judicial force to dispose of the rapidly increasing business of a growing state and a commercial people. But in this age of progress, it not unfrequently happens, that alteration is mistaken for reformation, and the public, feeling the necessity of some improvement, is too often contented with a mere *change*; not distinguishing, at first, between the benefits of a solid reform and the crude innovations of conceited pretension.

Judgment for the defendants.